Present: Hassell, C.J., Lacy, Koontz, Kinser, and Lemons, JJ., and Compton[*] and Russell, S.J.

CHERYL L. MONTGOMERY

v. Record No. 051243      OPINION BY JUSTICE ELIZABETH B. LACY
                                            April 21, 2006
DAVID H. MCDANIEL, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Judge

I.

In this case we consider whether a plaintiff alleged sufficient facts to maintain a cause of action for abuse of process.

II.

Cheryl L. Montgomery was employed by Laser Skin and Vein Center of Virginia, P.C. (LSVC), and David H. McDaniel, the owner and president of LSVC. Montgomery's daughter, Casey M. Bushey, also worked for LSVC and McDaniel. In early 2004, Bushey complained to LSVC's chief financial officer, Gregory P. Bergethon, that McDaniel sexually harassed her and committed an assault and battery on her. Bergethon confronted McDaniel, and on February 2, 2004, McDaniel signed an agreement providing for disciplinary action. As part of that agreement, McDaniel was relieved of his duties and was not to contact any employee or enter the premises of LSVC. A month

_____

[*] Senior Justice Compton participated in the hearing and decision of this case before his death on April 9, 2006.

later, on March 4, 2004, McDaniel repudiated the agreement, returned to LSVC, and placed Bergethon and three other employees on administrative leave.

On April 23, 2004, Bushey filed a bill of complaint against McDaniel, LSVC, and other entities owned by McDaniel.[1] Bushey sought a declaratory judgment that she had ownership rights in McDaniel's entities based on McDaniel's oral promise. She also sought compensatory and punitive damages for assault and battery, damages for fraud, an accounting, and a constructive trust. McDaniel filed a third-party cross-bill against Bergethon, Montgomery, and three other LSVC employees charging tortious interference with business relationships (Count I), breach of fiduciary duty (Count II), constructive fraud (Counts III and IV), common law and statutory conspiracy (Counts V and VI), breach of contract (Count VII), and breach of employment duties and responsibilities (Count VIII). The cross bill sought $1,000,000 in compensatory damages, $350,000 in punitive damages, and treble compensatory damages for the statutory conspiracy claim. Bushey was subsequently added as a cross-defendant.

---

[1] The other defendants were SkinConcepts, Ltd., LLC, SkinConcepts, Ltd., and Anti-Aging Research and Consulting, LLC. We will refer to all these parties collectively as "McDaniel."

The three LSVC employees named in the cross-bill filed a lawsuit against McDaniel and LSVC and, in his response to the cross-bill, Bergethon raised a number of claims against McDaniel. With the consent of the parties, the trial court consolidated these matters with the Bushey lawsuit.

By June 11, 2004, McDaniel had nonsuited the cross-bill as to the three LSVC employees other than Bushey and Montgomery and, by July 21, 2004, McDaniel had dismissed the cross-bill against Bergethon with prejudice pursuant to the terms of a settlement agreement.[2] McDaniel refused to dismiss the cross-bill against Montgomery and Bushey with prejudice, but nonsuited them prior to December 10, 2004, when Montgomery filed this litigation.

In her motion for judgment claiming abuse of process, Montgomery alleged that McDaniel and LSVC filed the cross-bill naming her as a defendant as a means of forcing Bushey to withdraw her suit.[3] Montgomery sought $200,000 in compensatory damages and $350,000 in punitive damages, plus costs and attorneys fees. McDaniel and LSVC filed a demurrer, asserting that Montgomery's pleadings did not state a cause of action

---

[2] The settlement agreement is not part of this record.
[3] Montgomery also included a count for malicious prosecution. At trial Montgomery conceded she could not prevail on that count and it was dismissed.

for abuse of process.  The trial court sustained the demurrer.
We awarded Montgomery an appeal.

### III.

On appeal, we review a trial court's judgment sustaining a demurrer de novo.  Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003).  We consider as true the facts alleged in the motion for judgment and the reasonable factual inferences that can be drawn from the facts alleged. McDermott v. Reynolds, 260 Va. 98, 100, 530 S.E.2d 902, 903 (2000).  We do not evaluate the merits of the allegations, but only whether the factual allegations sufficiently plead a cause of action.  Riverview Farm Assocs. Va. Gen. P'ship v. Board of Supervisors, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000).

To prevail in a cause of action for abuse of process a plaintiff must plead and prove:  "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings."  Donohoe Constr. Co. v. Mount Vernon Assocs., 235 Va. 531, 539, 369 S.E.2d 857, 862 (1988).  There is little dispute that Montgomery's motion for judgment contains allegations that are sufficient to satisfy the first element necessary to establish abuse of process, an ulterior motive.  The motion for judgment contains numerous allegations that McDaniel named Montgomery as a defendant in the cross-bill as a means of pressuring Bushey to

4

withdraw her suit against McDaniel.  The only issue before us is whether the facts alleged by Montgomery in her motion for judgment support the second prong of the cause of action, improper use of regularly issued process.

Montgomery argues, as she did in the trial court, that multiple allegations in her motion for judgment establish the improper use of regularly issued process.  She first asserts that this burden was satisfied by her allegations that McDaniel continued to maintain the cross-bill against her knowing he could not "make a case" against her because he had "concede[d]" that no plan or conspiracy existed when he non-suited the LSVC employees other than Montgomery and Bushey and dismissed Bergethon with prejudice.  We have not previously addressed whether allegations such as these that describe a failure to act rather than an affirmative act satisfy the requirement of showing "an act in the use of the process not proper in the regular course of the proceeding."  Donohoe, 235 Va. at 539, 369 S.E.2d at 862.  Nevertheless, we need not address that question in this case because other allegations in Montgomery's pleadings show that maintaining the cross-bill against Montgomery was justified regardless of the status of the conspiracy claim.

In addition to a conspiracy count, McDaniel's cross-bill contained allegations that Montgomery engaged in tortious

5

interference with business relationships (Count I), breach of fiduciary duty (Count II), and breach of employment duties and responsibilities (Count VIII). Thus, it was not improper use of process to maintain Montgomery as a defendant in the cross-bill when the conspiracy claim was allegedly no longer viable.

Next Montgomery argues that nonsuiting the cross-bill against her rather than dismissing it with prejudice was "evidence of [McDaniel's] intent to use it as a future threat." According to Montgomery, such a threat amounts to coercion and thus satisfies the second prong of the abuse of process analysis.

Adopting Montgomery's argument would render many nonsuits an improper use of process under the abuse of process analysis because a first nonsuit carries with it the right to refile the litigation in the future provided other requirements are met such as limitations periods. See, Code § 8.01-380(B), Code § 8.01-229(E)(3). The ability to refile the action at some future time is a right afforded a plaintiff by the General Assembly, regardless of any inconvenience or discomfort it might place on the nonsuited defendant. Exercising the statutory right to take a nonsuit knowing that, by statute, the litigation can be refiled does not qualify as "an act in the use of the process not proper in the regular

6

prosecution of the proceedings."  Donohoe, 235 Va. at 539, 369 S.E.2d at 862.

At oral argument, Montgomery's counsel cited as an independent act supporting the abuse of process claim the allegation that McDaniel's failure to produce the entire settlement agreement in "bad faith."[4]  Conceding that the pleadings did not allege that McDaniel was under any court order or other duty to provide the settlement agreement, Montgomery argued that this allegation of "bad faith" created an inference that Montgomery was legally entitled to the documents.  This argument, however, was not raised before the trial court, and we do not consider it for the first time on appeal.  Rule 5:25.

Furthermore, Montgomery alleges in her pleadings that McDaniel provided part of the settlement document to Montgomery and, arguing the remainder of the agreement was confidential and should not be subject to production, submitted the issue to the trial court for resolution. McDaniel complied with the trial court's ruling requiring production of the remainder of the settlement agreement. While withholding of documents may be sanctionable conduct

---

[4] At trial Montgomery asserted that the failure to produce the entire settlement document was part of the proof that the conspiracy claim was no longer viable and McDaniel should have

7

under Code § 8.01-271.1 in some circumstances, liability under that statute does not establish liability in an action for abuse of process.  In the present case, the pleadings recite a routine use of process and fail to show an improper use of that process.

IV.

In summary, Montgomery's motion for judgment clearly alleges a malicious or malevolent intent in McDaniel's institution of process; however, the allegations do not assert an act in the use of process not proper in the regular conduct of the proceeding.  The absence of such allegation is fatal to Montgomery's claim for abuse of process.  Accordingly, for the foregoing reasons, we will affirm the judgment of the trial court.

Affirmed.

JUSTICE LEMONS, with whom CHIEF JUSTICE HASSELL joins, dissenting.

I respectfully dissent.  Because the motion for judgment filed by Cheryl L. Montgomery ("Montgomery") alleged sufficient facts to maintain a cause of action for abuse of process and survive demurrer, I would reverse the judgment of the trial court.

---

dismissed the cross-bill against Montgomery, an argument we have already addressed.

8

"To survive a challenge by demurrer, a pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment. In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action.' " Hubbard v. Dresser, Inc., 271 Va. 117, 122-23, 624 S.E.2d 1, 4 (2006) (quoting Moore v. Jefferson Hospital, Inc., 208 Va. 438, 440, 158 S.E.2d 124, 126 (1967)). "For an abuse of process claim to survive a challenge by demurrer, one must plead: '(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings.' " Ely v. Whitlock, 238 Va. 670, 676, 385 S.E.2d 893, 897 (1989) (quoting Donohoe Construction v. Mount Vernon Assoc., 235 Va. 531, 539, 369 S.E.2d 857, 862 (1988)). As the majority recognizes, it is evident that Montgomery satisfied the first prong of an abuse of process claim. However, the majority concludes that Montgomery failed to "assert an act in the use of process not proper in the regular conduct of the proceeding." I disagree.

Montgomery's motion for judgment chronicled the relevant facts necessary to plead a cause of action for abuse of process. In Paragraph 2, Montgomery alleged that Dr. McDaniel sexually harassed Montgomery's daughter, Casey. In Paragraph 3, Montgomery alleged that Dr. McDaniel admitted his

9

misconduct and "signed an agreement providing for disciplinary action and protection for Casey." Montgomery attached a copy of this agreement to her motion for judgment. She then alleged in Paragraphs 4 and 5 that Dr. McDaniel "repudiated and revoked the agreement," placed numerous employees who knew about the alleged sexual harassment on administrative leave, "essentially [made] it impossible for [Casey] to continue her employment," and had his attorneys intimate to Casey's attorneys "that any legal action by Casey . . . would prove ill-advised."

After Casey filed a bill of complaint against Dr. McDaniel, he then filed a cross-bill against, among others, Casey and Montgomery seeking $3,350,000.00 in damages. Montgomery included this fact in her motion for judgment. Montgomery then alleged in Paragraph 7 that Dr. McDaniel's "joinder of [Montgomery] . . . was without any basis in fact, was malicious, and was an outrageous and vicious act of retaliation." Montgomery also alleged that Dr. McDaniel's cross-bill was to serve his "ulterior motive . . . namely, to put pressure on Casey to dismiss her suit . . . or to settle her just claims for a nominal sum, in order to spare her mother the stress and expense of defending a multi-million dollar claim." In Paragraph 14, Montgomery alleged that Dr. McDaniel withdrew his cross-bill against all of the named

parties except Casey and Montgomery. In Paragraph 20, Montgomery alleged that Dr. McDaniel did so "in the hope that [the cross-bill's] continued existence and the expense and inconvenience of defending it would be so destructive emotionally, physically and financially to Cheryl Montgomery that it would weaken Casey's resolve to have her claims adjudicated." Finally, in Paragraphs 15 and 16, Montgomery alleged that Dr. McDaniel "furnished [Montgomery] with a self-serving portion of the settlement documents, containing provisions designed to avoid the long scheduled July 21 hearing on the enforceability of the disciplinary action agreement" and that Dr. McDaniel "unsuccessfully sought to conceal the other provisions of the settlement from [Montgomery], well knowing that revealing those provisions would eliminate any chance of prevailing."

In discussing this last allegation, the majority states, "While withholding of documents may be sanctionable conduct under Code § 8.01-271.1 in some circumstances, liability under that statute does not establish liability in an action for abuse of process. In the present case, the pleadings recite a routine use of process and fail to show an improper use of that process." I disagree. The question is not whether liability under Code § 8.01-271.1 establishes liability in an action for abuse of process. Instead, the question is whether

11

Montgomery's allegation is an act by Dr. McDaniel in the use of process that was not proper in the regular prosecution of the proceedings such that Montgomery's motion for judgment survives Dr. McDaniel's demurrer.  Montgomery's allegation is exactly the type of conduct that should suffice to bring a cause of action for abuse of process because it goes directly to an illegitimate purpose in Dr. McDaniel's use of process.

Obstruction of discovery is a serious matter, and both the Code and our Rules allow for substantial consequences to both attorneys and parties who engage in such tactics.  See Code § 8.01-271.1 and Rule 4:12.  An allegation involving an abuse of discovery which increases the cost of litigation surely must qualify as "an improper use of process," especially where the improper motive is financial coercion.

Based on these allegations, Montgomery's motion for judgment was made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."  Hubbard, 271 Va. at 122, 624 S.E.2d at 4. Montgomery's motion for judgment contained both the existence of an ulterior purpose by Dr. McDaniel and an act by Dr. McDaniel in the use of the process that was not proper in the regular prosecution of the proceedings.  Therefore, I would reverse the judgment of the trial court and overrule Dr. McDaniel's demurrer.

12